1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   Maria T. F.,[1] | Case No. 5:19-cv-1828-AFM |
| 12           Plaintiff, | |
| 13       v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| 14   ANDREW M. SAUL, | |
| 15   Commissioner of Social Security, | |
| 16           Defendant. | |

17

18      Plaintiff seeks review of the Commissioner's final decision denying her

19  applications for disability insurance benefits. In accordance with the Court's case

20  management order, the parties have filed briefs addressing the merits of the disputed

21  issues. This matter is now ready for decision.

22                          **BACKGROUND**

23      In May 2014, Plaintiff applied for disability insurance benefits, alleging

24  disability since August 29, 2011. Plaintiff's claims were denied initially and on

25  reconsideration. (Administrative Record ("AR") 168-172, 181-185.) A hearing took

26

_____

27  [1]   Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure
5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case

28  Management of the Judicial Conference of the United States.

place on September 14, 2016 before an Administrative Law Judge ("ALJ"). Plaintiff (who was not represented by counsel) and a Vocational Expert ("VE") testified at the hearing. (AR 65-95.) On January 12, 2017, the ALJ issued a decision finding the Plaintiff not disabled. (AR 140-162.) The Appeals Council subsequently vacated that decision and remanded the case for further proceedings based on a lack of substantial evidence from the VE. (AR 165-166.) A second hearing was held before the ALJ on October 3, 2018. Plaintiff (who was represented by counsel) and a VE testified at the hearing. (AR 41-64.)

In a decision dated October 24, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, bilateral carpal tunnel syndrome, lumbar degenerative disc disease, status post fusion surgery, headaches, fibromyalgia, status post elbow surgery, myofascial neck pain, cervical radiculopathy, history of left ankle fracture, bilateral shoulder impingement, left shoulder labral tear, chronic obstructive pulmonary disease (COPD), insomnia, depression, and anxiety. (AR 17.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit 6 hours in an 8 hour period with the ability to stand, stretch, or sit an estimated 1 to 3 minutes per hour; occasionally reach overhead bilaterally; frequently push/pull with the bilateral upper extremities; frequent foot pedals; no extreme motions of the head such as looking over her shoulder; frequent fine and gross manipulation bilaterally; frequent power gripping or grasping bilaterally; occasionally climb stairs/ramps, no ladder/ropes/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold, commercial vibrations, fumes, dusts, odors, and other pulmonary irritants; avoid concentrated exposure to unprotected heights and fast moving, dangerous machinery; and mentally limited to moderately complex tasks of SVP 4 or less. (AR 19.)

Relying on the testimony of the VE, the ALJ concluded that through the date last insured (December 31, 2016), Plaintiff was unable to perform her past relevant work but could perform other jobs existing in significant numbers in the national economy. (AR 31-32.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 32.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

### DISPUTED ISSUES

1.  Whether the ALJ erred in finding that Plaintiff had transferrable skills from her past work to other work.

2.  Whether the ALJ properly rejected Plaintiff's subjective complaints.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citation omitted). Furthermore, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### DISCUSSION

**I.   Whether the ALJ erred in finding that Plaintiff had transferrable skills.**

Plaintiff contends that the ALJ erred in finding that Plaintiff had transferrable skills from her past work to other work.

**A. The ALJ's Findings**

At the administrative hearing, the VE testified that Plaintiff had past relevant

3

work as a collections clerk (DOT 241.357-010) and billing clerk (DOT 214.362-042). (AR 49-50.) In response to the ALJ's question, "would there be any transferable skills from the past relevant work," the VE responded "yes" and identified those skills as "reception work, providing information, and customer service." (AR 53.) The VE further testified that these skills would transfer to the jobs of customer service representative (DOT 219.387-014), information clerk (237.367-022), and receptionist (DOT 237.367-038). (AR 53-54.) Next, the ALJ asked the VE, "if we compare the tools, work process, work setting, or industry from the past relevant jobs to the jobs we're transferring to would there be little or no vocational adjustment in these areas?" The VE responded that "there would be minimal adjustment." (AR 54.)

Based on the VE's testimony, the ALJ found that Plaintiff had past relevant work as a collections clerk (DOT 241.357-010) and a billing clerk (DOT 214.362-042), and that from this work Plaintiff acquired the following transferrable skills: customer service skills, reception work, and providing information including answering telephone inquiries. Also based on the VE's testimony, the ALJ found that someone of the same age, with the same education, past relevant work experience, and RFC as Plaintiff could perform the following representative occupations: customer service representative (DOT 219.387-014), information clerk (237.367-022), and receptionist (DOT 237.367-038). (AR 31-32.)

**B. Relevant Law**

The regulations instruct the Commissioner to consider claimants "to have skills that can be used in other jobs, when the skilled or semi-skilled work activities [they] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). Social Security Rule ("SSR") 82-41 defines a "skill" as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." SSR 82-41 § 2(a), 1982 WL 31389, at *2.

4

Further, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." SSR 82-41 § 6, 1982 WL 31389, at *7. In this regard, the Ninth Circuit has held that when transferability of skills is an issue, an ALJ must identify the acquired work skills and the specific occupations to which those acquired work skills are transferable, even where the ALJ relies upon the testimony of a VE. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224-1225 (9th Cir. 2009).

**C. Analysis**

Plaintiff makes several arguments in support of her claim that the ALJ erred in finding that she had transferrable skills. First, Plaintiff contends that the skills identified by the VE and ALJ are actually examples of "unskilled tasks" as described in Social Security Administration Program Operations Manual System ("POMS") DI 25015.017 Part C No. 2. Plaintiff points out that the POMS list "answering a standard telephone" and "greeting customers" as examples of "unskilled tasks." (ECF No. 18 at 5.)

POMS DI 25015.017 Part C No. 2 includes the following under the heading "Examples":

| **Skills** | **Unskilled Tasks** |
|---|---|
| Answering a multi-line telephone (PBX) | Answering a standard telephone, operating a two-way radio or intercom |
| Assembling equipment or complex objects | Basic driving ability, filing papers, greeting customers, basic food preparation |
| Handling large amounts of money or keeping a money drawer balanced using computers | Performing routine money handling tasks |

Based upon the POMS examples, Plaintiff argues that "answering a standard telephone and greeting customers, the tasks that the vocational consultant noted were

'skills,' (AR 39), are actually 'unskilled tasks.'" (ECF No. 18 at 5.)[2] Plaintiff's argument is factually incorrect because the VE did *not* identify "answering a standard telephone" or "greeting customers" to be among Plaintiff's transferable skills. Next, Plaintiff states that "[r]eception work, answering telephone inquiries, and providing general information, are not skilled tasks but instead, are examples, per POMS DI 25025.17 Part C No. 2, of unskilled tasks." (ECF No. 16 at 5.) This argument is equally unavailing. To begin with, the skills the VE identified are not among the examples of "unskilled tasks" found in the POMS.[3] Further, while the VE mentioned "answering phones" as among Plaintiff's skills (AR 53), she clarified her response during questioning by Plaintiff's counsel. Specifically, when Plaintiff's counsel inquired how answering phones was a skill, the VE noted that Plaintiff's had performed her prior work as collections clerk on the phone and explained that the skill was not merely answering the phone but providing information to callers. (AR 59-61.)

Plaintiff provides no legal argument or authority for her conclusory assertion that the skills identified by the VE – namely, reception work, answering telephone inquiries, providing information, and customer service – are actually unskilled tasks, and the Court finds her argument unpersuasive. *See Cordileone v. Saul,* 2019 WL 5847832, at *8 (C.D. Cal. Nov. 7, 2019) (upholding finding that "supervision, management, customer service, cashiering, providing and obtaining information, handling customer complaints, scheduling appointments, answering phones, and

---

[2] Plaintiff's citation to the record is erroneous. Page 39 of the Administrative Record does not contain the VE's testimony.

[3] The Commissioner argues that because "it has no legally enforceable effect, the POMS cannot be used to undermine the VE's expert testimony." (ECF No. 21 at 2-3.) While the Commissioner is correct that the POMS does not have the force of law, it is persuasive authority. *See Warre v. Comm'r of Soc. Sec.,* 439 F.3d 1001, 1005 (9th Cir. 2006); *see also Carillo–Years v. Astrue,* 671 F.3d 731, 735 (9th Cir. 2011) ("POMS may be 'entitled to respect' . . . to the extent it provides a persuasive interpretation of an ambiguous regulation, . . . but it "does not impose judicially enforceable duties on either this court or the ALJ.") (citations omitted). Thus, the Court declines the Commissioner's invitation to completely disregard the POMS.

reception" were transferable skills); *Miller v. Astrue*, 2011 WL 1935833, at *9–10 (C.D. Cal. May 20, 2011) (rejecting plaintiff's argument that skills identified as "public contact" and "telephone and clerical skills" were actually unskilled). While the broad term "customer service skills" may be insufficient to comply with the specificity requirement of SSR 82-41, *see Wolfe v. Berryhill*, 2017 WL 1074932, at *6 (C.D. Cal. Mar. 21, 2017) ("customer service skills" does not comport with the definition of "skills" in SSR 82-41 because the term "describes a broad category of work, not specific job activities/skills such as answering phones, researching customer complaints, processing returns, or interacting with the public"), the VE here did not rely exclusively on "customer service." Instead, the VE set out specific skills including reception, answering phones and providing information.

Thus, the VE identified sufficiently specific "skills" and the ALJ provided the level of specificity required by SSR 82-41. *See Hartley v. Colvin*, 672 F. App'x 743, 744 (9th Cir. 2017) (ALJ made sufficient findings, supported by substantial evidence, by identifying the work skills that plaintiff had acquired and the specific occupations to which they were transferable).

Next, Plaintiff argues that the VE failed to identify how many jobs were specific to the industry in which Plaintiff had performed her past relevant work. (ECF No. 18 at 5-6.) Plaintiff points out that the occupation "collection clerk" is predominately performed in three types of industries: clerical, medical services, and financial and that her past relevant work was as a medical collector or medical biller for hospitals, pharmacies, and ambulances. (ECF No. 18 at 5, citing AR 369.) However, according to Plaintiff, the occupations identified by the VE involve different industries: the customer service clerk position is specific to the insurance industry; the information clerk position is generally in the retail industry or hotel industry; and the receptionist position involves answering and forwarding phone calls. Plaintiff argues that the skills she purportedly acquired in her past relevant work are not relevant to the occupations identified by the VE because they involve different

1   industries. (ECF No. 18 at 5-6.)

2          A claimant's acquired skills are transferable to other jobs when the skilled or

3   semiskilled work activities the claimant performed in past relevant work "can be used

4   to meet the requirements of skilled or semi-skilled work activities of other jobs or

5   kinds of work. This depends largely on the similarity of occupationally significant

6   work activities among different jobs." 20 C.F.R. § 404.1568(d)(1); *see* SSR 82-41,

7   1982 WL 31389, at *2. Transferability "is most probable and meaningful among jobs

8   in which: (1) the same or a lesser degree of skill is required, because people are not

9   expected to do more complex jobs than they have actually performed (i.e., from a

10  skilled to a semiskilled or another skilled job, or from one semiskilled to another

11  semiskilled job); (2) the same or similar tools and machines are used; and (3) the

12  same or similar raw materials, products, processes or services are involved. A

13  complete similarity of all these factors is not necessary." SSR 82-41, 1982 WL

14  31389, at *5; *see* 20 C.F.R. § 404.1568(d)(2)-(3). Some acquired job skills are

15  "unique to a specific work process in a particular industry or job setting," while others

16  "have universal applicability across industry lines...." SSR 82-41, 1982 WL 31389,

17  at *6.

18         Plaintiff's argument suggests that because the jobs identified by the VE are in

19  different industries, they necessarily require more than a little vocational adjustment.

20  The law does not support such a conclusion. Significantly, SSR 82-41 identifies job

21  skills with universal applicability across industry lines as including "clerical,

22  professional, administrative, or managerial types of jobs." In such jobs,

23  "transferability of skills to industries differing from past work experience can usually

24  be accomplished with very little, if any, vocational adjustment." SSR 82–41, 1982

25  WL 31389, at *5–6. Plaintiff's past relevant work included clerical and

26  administrative type jobs, and her skills are examples of those which transfer to

27  industries different from past work experience with little vocational adjustment.

28  Moreover, the VE testified that the occupations she identified would require minimal

8

vocational adjustment for an individual with Plaintiff's age, vocational background, and functional capacity. (AR 54.)

Finally, Plaintiff argues that the VE's testimony was "not quite clear, as SSR 82-41 instructs" because she "failed to identify the specific skill attained from the occupation performed with the new occupations." (ECF No. 18 at 6). Plaintiff apparently contends that SSR 82-41 demands that the VE provide a greater level of specificity. As mentioned above, the ALJ is charged with making specific findings on transferable skills. *See Bray*, 554 F.3d at 1225. The ALJ here satisfied this requirement in her decision by identifying the skills Plaintiff acquired at her past relevant work and specific occupations to which these skills were transferrable. In sum, substantial evidence supports the ALJ's determination that Plaintiff had transferrable skills, and that determination is free of legal error.

**II.    Whether the ALJ properly rejected Plaintiff's subjective complaints.**

Plaintiff contends that the ALJ improperly discounted her subjective symptom testimony.

### A.  Plaintiff's Subjective Complaints

Plaintiff alleges that she is unable to work due to the following physical and mental conditions: anxiety/panic disorder, bilateral carpal tunnel, displaced discs in neck C3-7, weakness/muscle pain/nerve pain, lumbar degenerative disc pain, sciatica, numbness/pain in limbs (arms, hands, legs, and feet), sleeplessness, IBS, headaches, and inability to drive/pay attention to the road. (AR 312, 344.) In her function report, Plaintiff stated that she cannot lift or sit without pain, she can only walk 100 feet before needing to rest for 15 minutes, any and all movements are painful, and she has muscle spasms. (AR 356-361.) Plaintiff further reported that she cannot lift and extend her arms for typing, has permanent numbness in her hands, grip loss, blurry vision, abdominal pain, vomiting, and severe anxiety due to prolonged pain (AR 383, 390).

At the first hearing, Plaintiff testified that she recently had back surgery but

was still experiencing numbness in her right buttock, pain in her right knee, and had difficulty lifting her left leg. Plaintiff also testified that her depression and anxiety prevent her from being able to concentrate and she forgets to do things (e.g., leaving food on the stove). (AR 78, 81, 84.) At the second hearing, Plaintiff testified that her physical condition had worsened. She testified that she had been partially bed-ridden because of the pain in her hips, neck and shoulders; bursitis; thoracic bulging discs; tendinitis; as well as pain, numbness, and tingling in her fingers. She further explained that her hands had worsened, stating that she cannot hold things and cannot carry things unless she uses both hands. (AR 44-45.)

With regard to daily activities, Plaintiff reported that she is able to engage in limited personal care (e.g., dressing herself, brushing her teeth, showering 2-3 times per week with the assistance of a "shower aid"); prepare "quick/simple" meals (e.g., instant oatmeal, basic sandwiches, frozen meals); limited housework (e.g., can do one load of laundry per week but needs assistance with other chores); and limited pet care (e.g., can feed the pets, but can no longer take them for walks). (AR 357-359.) Plaintiff reported that she can no longer engage in yard work to the extent she used to and has hired a gardener. (AR 359.) Plaintiff is able to manage her finances independently. (AR 359-360.) Plaintiff is able drive short distances and go to the store approximately twice a week, but has assistance with larger purchases. (AR 359.)

**B.  Relevant Law**

Where, as here, a claimant has presented evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16–3p, 2016 WL 1119029, at *4. Absent a finding that the claimant is malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Garrison v. Colvin*, 759

10

F.3d 995, 1014-1015 (9th Cir. 2014). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)). An ALJ's written decision must provide "explanation" or "specific reasons" to allow that decision to be reviewed meaningfully and to "ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494; *see also Laborin v. Berryhill*, 867 F.3d 1151, 1152-1153 (9th Cir. 2017) (ALJ's statement that claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Burrell*, 775 F.3d at 1137; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

## C. Analysis

Plaintiff contends that the ALJ's evaluation of Plaintiff's subjective symptom testimony is insufficient for two reasons. Initially, she contends that the ALJ failed to identify specific subjective allegations that were inconsistent with the medical evidence. Relying on *Brown-Hunter*, Plaintiff suggests that the ALJ was required to provide "citations" in her credibility analysis to identify what testimony she found not to be credible and the evidence that undermines that testimony. *Brown-Hunter*,

806 F.3d at 494 (finding error where the ALJ stated only a *general*, *nonspecific* finding regarding credibility after simply reciting the medical evidence) (emphasis added). Although "general findings are insufficient" and "the ALJ must identify what testimony is not credible and what evidence undermines claimant's complaints" (*Burrell*, 775 F.3d at 1138), this "identification" need not be in the form of a "citation." *See Treichler*, 775 F.3d at 1103 (ALJ's credibility analysis "need not be extensive" but "must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."); *Conn v. Colvin*, 2015 WL 2089368, at *4 (W.D. Wash. May 5, 2015) (rejecting claim that ALJ is required to "explain why every bit of rejected testimony lacks credibility" and noting that the Ninth Circuit has referred to subjective testimony "as a whole" without "isolating individual statements about particular symptoms") (citation omitted).

Here, the ALJ identified Plaintiff's subjective complaints – not only those noted in her function report and at the hearing (AR 20), but also subjective complaints found in the medical record. (*See* AR 21-29.) Further, as discussed below, the ALJ provided a particularized discussion of the reasons why she found Plaintiff's complaints were not credible. Thus, the ALJ's decision is sufficiently specific to allow this Court to conduct a meaningful review. *See Macdonald v. Comm'r of Soc. Sec.*, 2020 WL 2936607, at *10 (E.D. Cal. June 3, 2020) ("While the ALJ's discussion in this case may not be as specific as plaintiff may wish, the Court finds it is sufficient to allow for a meaningful determination that plaintiff's testimony was not rejected arbitrarily.").

Plaintiff also contends that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's subjective complaints. The ALJ's decision provides the following reasons for her credibility determination: Plaintiff's subjective complaints were (1) inconsistent with the medical record; (2) inconsistent with evidence that her impairments improved with treatment; (3) inconsistent with

Plaintiff's conservative and/or lack of treatment; (4) inconsistent with Plaintiff's failure to follow a prescribed course of treatment; and (5) inconsistent with her daily activities. (AR 28-29.)

Inconsistent with the medical record

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20, 28.) [4]

So long as it is not the only reason for doing so, an ALJ may permissibly rely on a lack of objective medical evidence to discount a claimant's allegations of disabling pain or symptoms. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same); *see also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

Here, the ALJ summarized the Plaintiff's subjective complaints and the medical record, which consisted primarily of rather normal and unremarkable findings, despite Plaintiff's complaints of allegedly disabling symptoms and pain. (AR 20-28). The ALJ began by noting that in 2011, Plaintiff complained of stress, anxiety, pressure on her chest, occasional shortness of breath, pain in the neck and

---

[4]  A finding that a claimant's subjective allegation is not substantiated by the record is different from a finding that the subjective allegation is inconsistent with the record. *See Mitzel v. Berryhill*, 2017 WL 434431, at *3 (W.D. Wash. Feb. 1, 2017). Here, while the ALJ uses the phrase "not consistent," it is evident from her decision that she relies upon a general lack of corroborating evidence to support Plaintiff's testimony rather than specific inconsistencies.

shoulder, and throbbing pain in the right upper arm, but her physical examination was "unremarkable." (AR 21, 421-426.) The ALJ also noted that Plaintiff began receiving chiropractic treatment that same year for neck pain, headaches, upper and lower back pain, and left shoulder/arm pain, but the radiograph of her cervical spine showed normal alignment, no compression or disc space narrowing, intact pedicles, intact spinous processes, and was overall normal. (AR 21, 962, 970-975.)

A nerve conduction study of the bilateral upper extremities in 2012 showed results consistent with mild left carpel tunnel syndrome and an early or very mild right carpel tunnel syndrome. (AR 690-691.) MRIs from that same year of the cervical spine and right shoulder showed mild and moderate results, respectively. (AR 703-704, 708.) Later that year, Plaintiff received multiple steroid injections, and although she continued to complain of neck pain and headaches, her physical examination was within normal limits, and her neurological exam was grossly physiologic. (AR 972-976.)

The ALJ also discussed Plaintiff's 2013 psychiatric examination, at which Plaintiff complained of depression, anxiety, stress, crying, vomiting, and irritable bowel syndrome related to work stress, but the results of her mental examination were overall normal and appropriate. Plaintiff was cooperative, maintained good eye contact, and was able to establish rapport with the examiner. Her psychomotor activity was within normal limits. Her speech was fluent with normal prosody, rate, and rhythm. Her mood was described as not overtly depressed or anxious, and she laughed and smiled appropriately and readily. (AR 606-610.)

The ALJ also discussed Plaintiff's 2013 orthopedic consultative examination, where the Plaintiff had a workup of her neck due to pain. The MRI showed some mild disc bulging, but Plaintiff denied any neurologic complaints down the arms, or any trouble buttoning or writing. She had no difficulties balancing. With respect to her lower back pain, it was central and did not radiate and she did not have weakness or difficulty ambulating. She was diagnosed with bilateral carpal tunnel syndrome,

but she stated that this was mild and did not affect her. The ALJ also summarized the results of the orthopedic exam. Although she had some tenderness over the midline of the lumbar spine, the majority of the findings were normal. She had a negative Spurling's test, negative FABER test, negative Hoffman test, and negative Babinski test. (AR 614-618.)

The results of Plaintiff's 2013 upper extremity electromyography were normal, and produced no significant findings. (AR 681-685.)

Plaintiff's 2014 consultative psychiatric examination also produced normal results and no diagnosis. (AR 826-829.)

Nerve conduction studies and EMG of the lower extremities in November 2014 showed no evidence of entrapment neuropathy or indicators of acute lumbar radiculopathy. (AR 836-839.)

In December 2014, Plaintiff had an MRI of her left shoulder and her lumbar spine. The left shoulder MRI showed acromioclavicular osteoarthritis, tendinosis supra and infraspinatus, fluid collection spinoglenoid notich consistent with synovial versus ganglion cyst, and grade II SLAP. The lumbar spine MRI showed spondylosis throughout the lumbar spine, disc desiccation, multilevel disc protrusion, bilateral foraminal narrowing, facet arthrosis, bilateral exiting nerve root compromise, and canal stenosis. (AR 917-920.)

Also in December 2014, Zena E. Cortes, M.D., performed a qualified medical examination. Dr. Cortes noted left sided trapezial spasms, decreased motor strength in the left shoulder, general muscle weakness in the left shoulder and left elbow, decreased sensation in the right arm, decreased range of motion in the cervical spine and right shoulder, positive Phalen's and Tinel's signs, decreased motor strength and range of motion in both wrists, spasms and tenderness in the lumbar spine with decreased range of motion, and that Plaintiff walked in a slow manner in a forward bent position and had difficulty with toe walk. However, the treatment notes from this examination also show that there was no tenderness in the cervical spine,

15

shoulders, elbows, or wrists, no swelling or trigger points, no atrophy, negative straight leg raising, sensation was intact in both lower extremities with normal reflexes and motor strength. Dr. Cortes diagnosed Plaintiff with degenerative disc disease of the lumbar spine, lumbar spine strain, chronic pain, bilateral carpel tunnel syndrome, and left shoulder pain. (AR 949-952, 986-991.)

In August 2015, Plaintiff continued to complained of neck, shoulder, wrist, and lower back pain, but denied any current medications. She was diagnosed with cervical sprain, cervical radiculopathy, lumbar sprain, lumbar radiculopathy, bilateral shoulder impingement, left shoulder labral tear, bilateral carpel tunnel syndrome (AR 924-930) and was scheduled for spinal fusion surgery the following year. (AR 936.)

Treatment notes following the surgery indicate Plaintiff was doing much better and her pain level decreased significantly. Although she complained of right hip pain, the physical examination produced normal to mild results. It was noted that Plaintiff's lower back pain had significantly improved and she was recommended to start physical therapy. (AR 1013-1014.)

In 2017, Plaintiff continued to complain of hip pain. An MRI of the bilateral hips revealed only mild degenerative changes at the hip joint, and the physical examination showed some tenderness, but motor strength was normal, and there was no pain with hip flexion, adduction, or internal rotation. (AR 1190.) Treating notes indicated some tenderness, but there was normal muscle bulk, grossly normal motor and sensory examination, and was independent in ambulation. (AR 1025-1028.) Plaintiff complained of continuing neck pain, but her mid back pain had improved 70% and injections were providing good relief. (AR 1034-1035.)

In February 2018, Plaintiff complained of a decline in memory and ability to concentrate. Results for the Montreal Cognitive Assessment (MOCA), however, were normal. (AR 1149-1150, 1155-1156.)

Considering the foregoing objective medical evidence, the ALJ limited Plaintiff's RFC to light work with additional restrictions. (AR 19). As set forth above,

and with the exception of the records dating from December 2014 until August 2016, the medical evidence consistently shows minimal and unremarkable findings. Based on this, the ALJ reasonably could conclude that the objective evidence was inconsistent with Plaintiff's allegations of totally disabling symptoms and pain.

Although Plaintiff argues that the medical evidence actually supports her subjective complaints (*see* ECF No. 18 at 12), the Court may not second guess the ALJ's determination where it is supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'") (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Saavedra v. Berryhill*, 2019 WL 1171271, at *4 (C.D. Cal. Mar. 12, 2019) (explaining that "this Court will not second guess the ALJ's reasonable determination . . . even if the evidence could give rise to inferences more favorable to plaintiff") (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012)).

Plaintiff points to evidence that she complained of pain, received pain management treatments, requested carpal tunnel release surgery, and "underwent multiple MRIs" to support her argument. (ECF No. 18 at 12.) However, Plaintiff's complaints of pain do not constitute objective medical evidence. In addition, neither Plaintiff's requests for surgery nor an MRI which revealed mild and moderate findings undermine the ALJ's characterization of the medical record. The ALJ considered both the positive and negative findings in the medical record when determining Plaintiff's RFC and adjusted the "light work" determination accordingly with significant restrictions.

In sum, the ALJ's conclusion that the medical record does not support Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms is supported by substantial evidence.

(2) Symptoms Improved with Treatment

The effectiveness of treatment is a relevant factor in determining the severity

of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits."). Accordingly, substantial evidence of effective treatment provides a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018) (affirming ALJ decision citing "instances where treatment and medication alleviated [the claimant's] symptoms" to discount claimant's testimony).

In the present case, the ALJ identified numerous instances in the record where Plaintiff's symptoms were successfully treated, and in some cases almost completely resolved, with medication, surgery, or physical therapy. For example, beginning in 2011, with respect to Plaintiff's COPD, the ALJ noted that Plaintiff "felt much better after getting Albuterol." (AR 21, 421-422.) In 2013, Plaintiff was treated for sciatica and right-sided lumbosacral strain with Valium and Toradol and showed 80% improvement within an hour. (AR 24-25, 626-627, 982.) Significantly, after her spinal fusion surgery in 2016, Plaintiff's pain level had "significantly improved" and had dropped to a 2/10. Treatment notes also reflected that Plaintiff was doing "extremely well." (AR 27, 1013-1014.) In addition, Plaintiff participated in physical therapy in 2018 and reported feeling "feeling great, stronger and more active and having soreness not pain due to increasing strength." Notes from physical therapy indicate that Plaintiff had successfully completed physical therapy treatment "with resolution of pain symptoms, increased strength and mobility, and return to previous level of activities." (AR 28, 1086-1089.)

The ALJ's finding that Plaintiff's symptoms were effectively treated is supported by substantial evidence. Consequently, the ALJ did not err in relying upon this to discredit Plaintiff's testimony regarding the disabling effects of her impairments.

(3)   Other reasons provided by the ALJ

The ALJ also relied on Plaintiff's allegedly conservative treatment, failure to follow a prescribed course of treatment, and daily activities as reasons for discounting Plaintiff's subjective symptom testimony. (AR 28-29.) The Court need not address these reasons because the ALJ provided other legally sufficient reason to discount Plaintiff's testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where the ALJ provided other valid bases for credibility determination).

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing the action with prejudice.

DATED:  8/3/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

19